IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| LARRY G. PHILPOT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-00590-AJT-TCB |
| | ) | |
| INDEPENDENT JOURNAL REVIEW, | ) | |
| | ) | |
| Defendant, | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Larry G. Philpot has sued Defendant Independent Journal Review for copyright infringement under 17 U.S.C. §§ 501, *et seq.* based on Defendant's publication of a photograph taken by Philpot of Ted Nugent performing in concert.[1] [Doc. No. 16] (the "Amended Complaint" or "Am. Compl."). Defendant has filed a Motion for Summary Judgment [Doc. No. 49] ("Defendant's Motion" or "Def.'s Mot.") and Plaintiff has filed a Motion for Partial Summary Judgment [Doc. No. 55] ("Plaintiff's Motion" or "Pl.'s Mot.") (collectively, the "Motions" or "Mots."). For the reasons stated below and because there are no genuine issues of material fact, Defendant is entitled to judgment as a matter of law. Plaintiff's Motion is therefore **DENIED**; Defendant's Motion is **GRANTED**, and this action is **DISMISSED**.

### I.    BACKGROUND

The following facts are not in dispute, unless otherwise indicated:

1.  Defendant Independent Journal Review ("IJR") is a recognized news organization. In 2016, IJR became one of the first two digital media companies accepted into the News Media

---

[1] Ted Nugent is a popular American singer-songwriter, guitarist, and political activist. Ted Nugent, https://www.tednugent.com/ (last visited Aug. 18, 2021).

Alliance, a trade association representing approximately 2,000 newspapers in the United States and Canada. [Doc. No. 50] ("Defendant's Memorandum" or "Def.'s Mem.") at 8; [Doc. No. 82] ("Plaintiff's Opposition" or "Pl.'s Opp'n") at 6-7.

2. IJR owned and operated the www.ijr.com, www.injo.com, www.ijreview.com, and www.ijr.org websites. Def.'s Mem. at 8; Pl.'s Opp'n at 7.

3. IJR did not charge website visitors to access its websites. Def.'s Mem. at 8; Pl.'s Opp'n at 7.

4. Plaintiff Larry G. Philpot ("Philpot") is a photographer that specializes in concert photography and has licensed his copyrighted works. Def.'s Mem. at 8; Pl.'s Opp'n at 7; [Doc. No. 59] ("Plaintiff's Memorandum" or "Pl.'s Mem.") at 9; [Doc. No. 77] ("Defendant's Opposition" or "Def.'s Opp'n") at 7.

5. Philpot took the following photograph of Ted Nugent while performing in concert at the Murat Egyptian Room in Indianapolis, Indiana on July 31, 2013 (the "Photograph"). Def.'s Mem. at 8; Pl.'s Opp'n at 7.



*Id.*

6.  The Photograph is an original work that Philpot created by employing several creative decisions, including selecting the subject matter, angle of photography, exposure, composition, framing, location, and exact moment of creation. Pl.'s Mem. at 10; Def.'s Opp'n at 7.

7.  On August 8, 2013, Philpot entered into a photograph license agreement with AXS TV (the "AXS TV Agreement"). *Id.*

8.  Philpot, who understands the difference between published and unpublished photographs for the purposes of registering copyrights, submitted the Photograph for registration on August 15, 2013 with the United States Copyright Office (the "Copyright Office") as part of a collection of unpublished photographs; and based on that application, on August 21, 2013, the Copyright Office issued a registration certificate for that collection of photographs, Certificate Number VAu 1-164-624. Def.'s Mem. at 6-7; Pl.'s Opp'n at 7.[2]

9.  In 2013, Philpot offered the Photograph through Wikimedia for distribution, public display, and public digital performance under a Creative Commons License. *Id.* A Creative Commons license is a simple, standardized copyright license that anyone can use to license their work. The copyright holder designates their work as governed by a Creative Commons license, and anyone may use the work provided they adhere to the terms of the license. *Id.*

10. The terms that Philpot specified in his Creative Commons 3.0 License included that a person using one of his photographs include with that use an attribution to Philpot with his name, Larry Philpot, and the URL for his website, www.soundstagephotography.com. Pl.'s Mem. at 11; Def.'s Opp'n at 8. Philpot's Creative Commons 3.0 License also provides that "the rights

---

[2] Defendant argues that the date of registration is August 21, 2013 because the effective date of registration is the day on which the application, deposit, and fee were received by the Copyright Office. Def.'s Opp'n at 7. But any dispute as to the date of registration is not material for the purposes of the Motions.

granted hereunder will terminate automatically upon any breach by You of the terms of this
License." *Id.*

11. On or about March 30, 2016, IJR published an article titled "15 Signs Your Daddy Was a
Conservative" on its websites (the "Conservative Signs Article"). Def.'s Mem. at 10; Pl.'s
Opp'n at 8. The Conservative Signs Article discussed how to determine whether a parent is or
was conservative, and contained a checklist of 15 pictures, videos, and political quotes to
determine being politically conservative. *Id.* One of the Article's pictures displayed on its
website as an example of a conservative was the Photograph, with the phrase "He Hearts 'The
Nuge.'" Pl.'s Mem. at 35; Def.'s Opp'n at 20.

12. IJR published the Photograph without the attribution on its website that Philpot required
under the Creative Commons 3.0 License. Rather, the Conservative Signs Article included a link
to the Wikipedia entry for Ted Nugent, and through that link, the Wiki Commons site where the
Photograph was hosted with all the required attribution information. [Doc. No. 77-2] at 2; *see
also* [Doc. No. 77-1].

13. IJR generated a negligible amount of revenue attributable to advertisements run on the
webpages displaying the Conservative Signs Article. From December 22, 2015 to February 10,
2021, the Conservative Signs Article had less than 500 page views generating about $2 or $3 in
advertising revenue for all IJR websites. Def.'s Mem. at 10; Pl.'s Opp'n at 8.

14. Philpot did not send a cease-and-desist letter or a notice of infringement to IJR or
otherwise communicate with IJR concerning the Photograph or the alleged infringement of the
Photograph prior to filing his original Complaint on May 26, 2020. *Id.*

15. On May 26, 2020, Plaintiff filed a civil action in this Court against Defendant for
copyright infringement under 17 U.S.C. § 501, seeking damages, injunctive relief pursuant to 17

U.S.C. § 502, seizure of the Ted Nugent Photo, and attorney's fees and costs pursuant to 17

U.S.C. § 505. [Doc. No. 1]; *see also* [Doc. No. 16] (the "Amended Complaint" or "Am.

Compl.") ¶¶ 43-53.

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

The Motions were fully briefed;[3] and a hearing was held on the Motions on April 21, 2021,

following which the Court took the Motion under advisement.[4]

## II.   LEGAL STANDARD

Summary judgment is appropriate only if the record shows that "there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986);

*Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking

summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is

such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S.

at 248.

Once a motion for summary judgment is properly made and supported, the opposing

party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, to defeat a properly supported motion

---

[3] *See* [Doc. No. 50] ("Defendant's Memorandum" or "Def.'s Mem."); [Doc. No. 59] ("Plaintiff's Memorandum" or "Pl.'s Mem."); [Doc. No. 82] ("Plaintiff's Opposition" or "Pl.'s Opp'n"); [Doc. No. 77] ("Defendant's Opposition" or "Def.'s Opp'n"); [Doc. No. 93] ("Plaintiff's Reply" or "Pl.'s Reply"); [Doc. No. 88] ("Defendant's Reply" or "Def.'s Reply").
[4] On October 26, 2020, Defendant filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim [Doc. No. 25], which the Court denied without prejudice on November 18, 2020 [Doc. No. 31]. Defendant filed his Answer with nineteen affirmative defenses on December 1, 2020, [Doc. No. 32] at 8-10, and Plaintiff responded with a Motion to Strike Affirmative Defenses [Doc. No. 33], which the Court denied "without prejudice to either party's position with respect to the legal sufficiency of any particular defense or the burden of proof as to any particular issue." [Doc. No. 69]. On March 16, 2021, Defendant and Plaintiff filed their respective motions for summary judgment. [Doc. Nos. 49, 55].

for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247–48 ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

### III.   ANALYSIS

IJR asserts that (1) Philpot does not hold a valid copyright registration for the Photograph because it was already a published photograph when included in the relied upon registration application for a collection of unpublished photographs; and (2) using the Photograph in an article focused on social commentary and political viewpoints constitutes "fair use" under 17 U.S.C. § 107. As to these positions, Plaintiff contends that (1) the Photograph was not yet "published" when included in the relied upon registration application; and (2) IJR cannot claim fair use because its use was not "transformative."[5] The Court addresses each issue in turn.

#### A. Validity of the Copyright Registration

---

[5] Because of the Court's resolution of this case on the grounds discussed, there is no need for the Court consider Defendant's affirmative defenses, which in some aspects present factual issues. For example, Defendant contends that because Plaintiff discovered, or with the required diligence, should have discovered, the use of the Photograph on March 30, 2016, when it was published to IJR's website, or shortly thereafter, Plaintiff's claim is time-barred by the three-year statute of limitations period set forth in 17 U.S.C. § 504(b) since he did not file suit until May 26, 2020, *see* [Doc. No. 1], [Doc. No. 77] 16-18. However, Plaintiff has affirmed that despite diligent efforts he did not discover the alleged infringement until May 29, 2017. [Doc. No. 60] at 12. Based on the current record, the Court finds a factual dispute precludes Defendant's obtaining judgment in its favor as a matter of law on its statute of limitations defense.

6

To establish copyright infringement, a plaintiff must show: (1) ownership of a valid copyright, and (2) unauthorized copying of the copyrighted work. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). A work's copyright must be registered with the Copyright Office before a plaintiff can file a suit for copyright infringement. 17 U.S.C. § 411(a) ("no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title"). The Supreme Court has decided that "'registration . . . has been made' within the meaning of 17 U.S.C. § 411(a) not when an application for registration is filed, but when the Register has registered a copyright after examining a properly filed application." *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC,* 139 S. Ct. 881, 892 (2019). A valid copyright registration is therefore a prerequisite to bringing a copyright infringement claim. *See Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.,* 896 F.Supp.2d 223, 229 (S.D.N.Y. 2012) (a "copyright holder may only sue for infringement of that copyright if it possesses a valid copyright registration.").

A copyright registration certificate is valid even if the certificate contains inaccurate information, unless the applicant knew that the information was inaccurate and the inaccuracy, if known to the Register of Copyrights, would have caused the Register to refuse registration. 17 U.S.C. § 411(b)(1). While a copyright registration certificate provides prima facie evidence that the copyright is valid and that the facts stated in the certificate are correct, 17 U.S.C. § 410(c), "the presumption of validity may be rebutted where other evidence in the record casts doubt on the question." *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997) (internal citation and quotation marks omitted).

The Copyright Act permits the registration of multiple works as a single work.  17 U.S.C.
§ 408(c)(1).  For purposes of registration as a single work, copyright regulations distinguish
between published works and unpublished works.  *See* 37 C.F.R. § 202.3(b)(4)(i).  For the
purposes of the Copyright Act, "publication" is the distribution of copies or phonorecords of a
work to the public by sale or other transfer of ownership, or by rental, lease, or lending.  17
U.S.C. § 101.  However, the Copyright Office will not accept a registration as valid if a
published work is included in an unpublished collection.  *Gold Value Int'l Textile, Inc. v.
Sanctuary Clothing, LLC*, 2017 WL 3477746, at *3 (C.D. Cal. May 12, 2017) (citing U.S.
Copyright Office, Compendium III § 1802.7(C)).  The Copyright Office's Compendium III also
provides that "an applicant cannot use [the unpublished collection] option to register a number of
published and unpublished works.  Compendium III § 1103.2.  If any of the works have been
published, the applicant should not include those works in the claim."  Compendium III §
1106.1.  Critically, the published work must be registered separately.  *Gold Value Int'l Textile,
Inc.*, 2017 WL 3477746, at *3.  Indeed, wrongly identifying a number of published individual
works as part of an unpublished collection has been deemed "a fundamental registration error"
invalidating the copyright registration.  *Family Dollar Stores, Inc.*, 896 F. Supp. 2d at 225
(quoting *Determined Prods., Inc. v. Koster*, 1993 WL 120463, at *1 (N.D. Cal. Apr. 13, 1993)).

Defendant claims that the Photograph was never validly registered because it had already
been "published" by way of a "license agreement" on August 8, 2013 with AXS TV [Doc. No.
54-2] (UNDER SEAL) when it was included in his copyright registration application for a
collection of unpublished photographs filed 7 days later, on August 15, 2013, and covered by the
copyright certificate issued on August 21, 2013 in connection with that application.  Def.'s Mem.
at 9 (citing to "License of Photographs" giving AXS TV the "[r]ight to [i]nspect, [r]eview, and

[c]urate [l]ibrary [p]hotographs" [Doc. No. 54-2] (UNDER SEAL)). Alternatively, Defendant contends that any presumption of validity is rebutted by Philpot's knowledge that the Photograph had been published when he submitted it as part of his registration application for a collection of unpublished photographs and by the fact that the Register of Copyrights would have refused registration of the collection of unpublished works if it knew it contained a published work. Def.'s Opp'n at 14.

Philpot does not dispute that he entered into a licensing agreement with AXS TV on August 8, 2013. However, he has filed a declaration stating that the Photograph was not included in that licensing agreement until September 10, 2013, when in exchange for $4,500 he granted a two-year license to AXS TV that allowed it to "inspect and review" the Photograph and other photographs. Pl.'s Opp'n at 7 (citing Philpot's declaration); Pl.'s Opp'n at 15-23.[6] Because the Court must view all facts in the light most favorable to the non-moving party, there appears to be a factual dispute that precludes judgment in Defendant's favor as a matter of law on its defense that no valid registration covers the Photograph. *Anderson*, 477 U.S. at 247–48.

**B. Fair Use**

Assuming, without deciding, that the Photograph was properly registered, Defendant is nevertheless entitled to judgment in its favor as a matter of law on its fair use defense.

Congress codified the common-law doctrine of fair use in the Copyright Act of 1976, which provides that the "fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means . . . for purposes such as criticism, comment, news reporting, teaching, . . . scholarship, or research, is not an infringement of copyright." 17 U.S.C.

---

[6] The record does not indicate the number of items included in the agreement, only that Philpot would produce "at least 1,000 photographs . . . within 30 business days . . . [and that] AXS TV shall pay Philpot $4,500." [Doc. No. 54-2] (UNDER SEAL).

§ 107. When determining whether a use constitutes a "fair use," courts consider several factors, including (1) the purpose and character of the use, including whether the use is commercial or for non-profit educational purposes, (2) the nature of the copyrighted work, (3) the amount and substantiality of the portion of the work used in relation to the work as a whole, and (4) the effect of the use on the potential market for or value of the work. *Id.*; *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 576–77 (1994).

In weighing these factors, courts should not treat the factors in isolation, "but rather the results are to be weighed together, in light of the purposes of copyright." *Bouchat v. Balt. Ravens Ltd. P'ship.* (*Bouchat I*), 619 F.3d 301, 307–08 (4th Cir. 2010) (quoting *Campbell*, 510 U.S. at 578 (internal quotation marks omitted)). At the same time, the Fourth Circuit counsels that courts should "place[] primary focus on the first factor." *Bouchat v. Balt. Ravens Ltd. P'ship.* (*Bouchat II*), 737 F.3d 932, 937 (4th Cir. 2013); *but see also Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 566 (1985) ("This last factor [the effect of the use on the potential market for or value of the work] is undoubtedly the single most important element of fair use.").

In determining the "purpose and character of the use," a court should consider (i) "whether the new work is transformative;" and (ii) "the extent to which the use serves a commercial purpose." *Bouchat II*, 737 F.3d at 939 (internal quotation marks and citations omitted). "A 'transformative' use is one that employ[s] the quoted matter in a different manner or for a different purpose from the original, thus transforming it." *A.V. ex rel. Vanderhye v iParadigms, LLC*, 562 F.3d 630, 638 (4th Cir. 2009) (internal quotation marks and citation omitted). "Transformative works rarely violate copyright protections because the goal of copyright, to promote science and the arts, is generally furthered by the creation of

10

transformative works. Such works thus lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright." *Bouchat II*, 737 F.3d at 939.

In *Philpot v. Media Rsch. Ctr. Inc.*, 279 F. Supp. 3d 708, 714 (E.D. Va. 2018) ("*MRC*"), the Court considered the defense of fair use in a strikingly similar case, involving the same plaintiff as in this case. In *MRC*, Philpot sued an online conservative non-profit news and commentary organization for copyright infringement based on the defendant's use of photographs of famous country music stars Kenny Chesney and Kid Rock in articles about the political views of country music stars. This Court granted summary judgment in defendant's favor on its fair use defense, because, *inter alia*, (1) defendant used Philpot's photographs for purposes of commentary on issues of public concern; (2) defendant's commercial gain from the use of Philpot's photographs was minimal; (3) Philpot's purpose for taking the photos was to gain greater fame; and (4) there was no market harm for Philpot's photographs because he offered them for free. *MRC*, 279 F. Supp. at 713–22. From what the Court can tell, the only difference between that case and this one is that (1) in this case, Philpot may have received, or be in a position to receive, some value for the Photograph under the AXS TV Agreement, whereas in *MRC*, Philpot received no renumeration for the photos, and (2) while the record does not indicate whether IJR is a non-profit organization, it does not charge its readers, whereas in *MRC*, defendant was a non-profit organization that allowed its readers to access its articles for free. Plaintiff's only substantive response to *MRC,* which features centrally in Defendant's briefing, is that "it is no longer good law" based upon the Fourth Circuit's holding in *Brammer v. Violent Hues Prods., LLC*, 922 F.3d 255 (4th Cir. 2019). [Doc. No. 82] at 27.[7]

---

[7] Plaintiff also cites to a number of other cases, which the Court has reviewed. The Court finds them inapposite as they deal with the fair use defense at the motion to dismiss stage without the benefit of a summary judgment record.

In *Brammer*, the plaintiff brought an action against the owner/operator of a website and others, alleging copyright infringement of his photograph depicting a bird's-eye view of a Washington, D.C. neighborhood at night (Adams Morgan), with vehicle traffic appearing as streaks of light. *Brammer*, 922 F.3d at 255.  Considering the same factors as the Court did in *MRC*, the Fourth Circuit held that defendant's copying of the photograph was not fair use.  *Id.*  In doing so, the Fourth Circuit concluded that defendant's use of the photograph was not "transformative" because it did not provide a "'new context to serve a different purpose'" than the photograph originally or  "generate a societal benefit by imbuing the original with new function or meaning." *Id.* at 263–64 (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007)).[8]  Rather, defendant engaged in a commercial use of the photo to promote a for-profit film festival, which "[did] not necessarily create a new function or meaning that expands human thought," *id.* at 264–65.  The Fourth Circuit also concluded that (1) the defendant acted negligently and in bad-faith by using materials labeled "© All rights reserved," *id.*; (2) the photo had been licensed on two other occasions for similar use for a fee of $1,250; and ultimately, (3) defendant's "'informational' use of the photo as a stock image [did] not further [the Copyright Act's] intellectual objective because [defendant] said nothing new through this use, . . . did not comment on the Photo, promote the Photo, 'remix' the Photo, or otherwise engage with the Photo in a way that might stimulate new insights," *id.* at 269.  Instead, defendant "publish[ed] a tourism guide for a commercial event and include[d] the Photo to make the end product more visually interesting."  *Id.* at 269.  Nothing in *Brammer* suggests that a different decision should have been reached in *MRC*: the Fourth Circuit considered the same factors as

---

[8] In *Brammer*, 922 F.3d at 263, the Fourth Circuit observed that "even a wholesale reproduction may be transformed when placed in a 'new context to serve a different purpose' . . . [but] [b]ecause of the minimal changes to the Photo's content and context, we conclude that Violent Hues' copying was not transformative."

those in *MRC* and the photo's commercial context and purpose in *Brammer* was fundamentally different than in *MRC*.

Here, as in *MRC*, and unlike in *Brammer*, Defendant's use of the Photograph satisfied, as a matter of law, the criteria for "fair use," as defined in 17 U.S.C. § 107, as it was clearly used "for purposes such as . . . comment, news reporting, [and] teaching, . . . not an infringement of copyright." It was part of a commentary on issues of public concern that placed it in a "new context to serve a different purpose." As such, the Photograph had a "transformative use." As in *MRC*, there was *de minimis* commercial gain to, and lack of a financial motive by, the Defendant, no demonstrable market or financial injury to Philpot or bad faith or negligent use of the Photograph, particularly in light of the terms under which Philpot allows the use of his photographs, and the attribution to Philpot reachable from the Article, albeit indirectly.[9]

## IV.   CONCLUSION

Accordingly, for the foregoing reasons, it is hereby

ORDERED that Plaintiff Larry G. Philpot's Motion for Partial Summary Judgment [Doc. No. 55] be, and the same hereby is, **DENIED**; and it is further

ORDERED that Defendant Independent Journal Review's Motion for Summary Judgment [Doc. No. 49] be, and the same hereby is, **GRANTED** and this case is **DISMISSED**.

---

[9] The Conservative Signs Article included a link accessing the Wikipedia entry for Ted Nugent, and through that, the Wiki Commons site where the Photograph was hosted, including all the attribution information required by Philpot. [Doc. No. 77-2] at 2; *see also* [Doc. No. 77-1].

13

The Clerk is directed to enter judgment pursuant to Rule 58 in accordance with this Order and forward a copy of this Order to all counsel of record.

Anthony J. Trenga
United States District Court

Alexandria, Virginia
August 18, 2021

14